IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

AMBASSADOR LARRY IRVING, RITCHIE JUNIOR,

      Petitioner,

v.                     Case No. 2:04-cv-01239

STATE OF WEST VIRGINIA,
STATE OF OHIO,
JUDGE JOSEPH GOODWIN,
sued in his individual capacity, and
JUDGE GLADYS KESSLER,
sued in her individual capacity,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending are the following motions: Petitioner's Petition for a Writ of Error and Writ of Mandamus (docket sheet document # 1), the State of West Virginia's Motion to Dismiss (# 7-1), or in the alternative, Motion for Summary Judgment (# 7-2), the State of Ohio's Motion to Dismiss (# 9), Petitioner's Motion for Entry of Default against the State of West Virginia and State of Ohio (# 11), Petitioner's Motion for Hearing concerning his Motion for Entry of Default against the State of West Virginia and State of Ohio (# 13), Joseph Goodwin's Motion to Dismiss (# 15-1), Motion for Sanctions (# 15-2), and Motion to Strike the Petition (# 15-3), Petitioner's Motion for Entry of Default against Joseph Goodwin (#

18), Petitioner's Motion for Hearing concerning his Motion for Entry of Default against Joseph Goodwin (# 20), Joseph Goodwin's Motion to Strike Motion for Entry of Default against him (# 22), Petitioner's Motion for Entry of Default against Gladys Kessler (# 24), Petitioner's Motion for Hearing concerning his Motion for Entry of Default against Gladys Kessler (# 26) and Gladys Kessler's Motion to Strike (# 28-1) and Impose Sanctions (# 28-2), and in the alternative, Motion to Dismiss (# 28-3).

### PROCEDURAL HISTORY

On November 19, 2004, Petitioner filed a document entitled "Writ of Error Writ of Mandamus Treaty of 1789 Constitution of United States of America Article II Section 2[3]" (hereinafter the "Petition"). (# 1). The Petition is one in a series of civil actions filed by Petitioner, and his associates, "Pamela Sue, Ervin" (hereinafter "Ervin") and "Joel Anson, Shuler" (hereinafter "Shuler"). The undersigned will briefly address the civil actions filed in this court by these individuals.

Shuler has filed the following civil actions:

1.  <u>Shuler v. Hill, et al.</u>, 6:96-cv-02088 (S.D. W. Va. 1997)(Haden, C.J.)(dismissed for failure to state a claim upon which relief can be granted).

On December 11, 1996, Shuler filed this lawsuit against Judge George W. Hill, Judge of the Circuit Court of Wood County, Sara Reeves, a social worker for the West Virginia Department of Health and Human Resources ("DHHR"), and attorney, Joseph Albright, Jr.

2

The cryptic Complaint alleges that these defendants acted in concert to violate Shuler's constitutional rights when defendant Reeves filed a petition which apparently resulted in the removal of Shuler's children from his custody.  The matter was assigned to Chief United States District Judge Charles H. Haden II (hereinafter "Judge Haden"), and was referred to United States Magistrate Judge Jerry Hogg (hereinafter "Magistrate Judge Hogg") for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On January 31, 1997, Magistrate Judge Hogg submitted his Report and Recommendation recommending that the District Court grant the motions to dismiss filed by each of the defendants.  On March 4, 1997, Judge Haden adopted Magistrate Judge Hogg's Report and Recommendation, and granted the motions to dismiss of all of the defendants.

   2.   <u>United States ex rel. Shuler v. Hill, et al.</u>, 6:97-cv-00220 (S.D. W. Va. 1997)(Haden, C.J.)(dismissed for failure to state a claim upon which relief can be granted).

This Complaint was filed by Shuler on March 5, 1997.  The defendants named in this Complaint were Judge George Hill and Judge Robert Waters, Circuit Judges of Wood County, and Ginny Conley, Prosecuting Attorney for Wood County.  The allegations in this Complaint are very hard to discern; however, it appears that they concern false imprisonment or unlawful arrest.

This matter was also assigned to Judge Haden, and referred to Magistrate Judge Hogg.  On May 2, 1997, Magistrate Judge Hogg submitted his Report and Recommendation recommending that the District Court deny Shuler's motions for entry of default and default judgment against all of the defendants and grant the defendants' motions to dismiss.  On March 22, 1997, Judge Haden adopted the Report and Recommendation and denied Shuler's motions for entry of default and default judgment against all of the defendants and granted the defendants' motions to dismiss.

3.  <u>Shuler v. Kirkpatrick</u>, 6:97-cv-00569 (S.D. W. Va. 1997)(Goodwin, J.)(dismissed for failure to state a claim upon which relief can be granted).

Shuler filed this Complaint on June 3, 1997.  The defendants named in this matter were Judge Haden, Magistrate Judge Hogg, and Judy Kirkpatrick, a Deputy Clerk of the United States District Court for the Southern District of West Virginia, Parkersburg Division (hereinafter "Kirkpatrick").  The allegations in this Complaint centered around actions taken by the defendants in Shuler's prior civil action, <u>United States ex rel. Shuler v. Hill, et al.</u>, 6:97-cv-00220; specifically, Judge Haden's reference of the motions filed therein to Magistrate Judge Hogg for submission of proposed findings and a recommendation for disposition, the adoption of Magistrate Judge Hogg's Report and Recommendation, and Kirkpatrick's refusal to enter defaults against the defendants.

4

An Order entered by Judge Goodwin on June 25, 1997, found that
Judge Haden and Magistrate Judge Hogg were entitled to absolute
judicial immunity and that Kirkpatrick was entitled to qualified
immunity.   Thus, Judge Goodwin granted the defendants' motion to
dismiss.  The dismissal order further admonished Shuler as follows:

> Plaintiff has an absolute right to disagree with the
> Courts.  However, that disagreement does not provide the
> right to waste judicial resources with baseless and
> vexatious litigation.  Plaintiff's pleadings are largely
> incomprehensible and silly.  Therefore, this Court feels
> compelled to warn plaintiff against filing additional
> meritless motions or actions.  Such would be viewed by
> this Court as vexatious and frivolous, warranting the
> imposition of sanctions pursuant to Rule 11 of the
> Federal Rules of Civil Procedure.

(# 8, Ex. D; # 15, Ex. 1).

4.   <u>Shuler v. State of West Virginia</u>, 6:97-cv-01199 (S.D. W.
Va. 1997)(Goodwin, J.)(this matter was consolidated with
one of Ervin's cases, 6:97-cv-01145, and was dismissed
with prejudice)(see below).

Shuler filed this Complaint on December 9, 1997, naming as
defendants all of the defendants from his prior lawsuits, as well
as the State of West Virginia, Wood County, Kanawha County, the
City of Parkersburg, the City of Charleston, Chief Justice Margaret
Workman of the Supreme Court of Appeals of West Virginia, Wood
County Prosecuting Attorney Michelle Rusen, Prosecutor Glen Neal,
attorney Keith White, and DHHR.   The allegations made in this
Complaint, again, claimed violations of Shuler's due process
rights; however, the allegations took on a bizarre tone.   For
example, Shuler alleged throughout the Complaint that he was

5

injured by the various defendants' actions

> for knowledge of the Law under Title 42 u.S.C. Section 1986 and without Due Process of Law under u.S.C.A. V and XIV error by Monopolizing of Rights of Procedural and Substantive under the Constitution of the u.S.A. under Conspiracy by setting aside the Constitution of the u.S.A. under a Foreign State/Power by the exhibition of a Foreign Yellow Fringe Flag not recognized or commissioned by the u.S.A. or by any County in the World with an Eagle of Gold on top of the flagpole and a Tassel of Gold draped around the Foreign yellow fringe Flag.

(Shuler v. State of West Virginia, Case No. 6:97-cv-01199, Compl.)

This case was assigned to Judge Goodwin.  On December 31, 1997, Judge Goodwin consolidated this case with Ervin v. State of West Virginia, 6:97-cv-01145.  The undersigned will provide further details concerning the dismissal of this matter in a discussion of Ervin v. State of West Virginia, Case No. 6:97-cv-01145, below.

Ervin has filed the following civil actions:

1.  United States ex rel. Ervin v. Rhodes, 6:97-cv-00921 (S.D. W. Va. 1997)(Haden, C.J.)(dismissed for failure to state a claim upon which relief can be granted).

Ervin filed this Complaint on September 19, 1997.  The defendants named in this Complaint were four Wood County magistrates, Prosecuting Attorney Dan Fowler, State Trooper Jeff Bowles, Wood County Deputy Sheriff Harold Phillips, United States Attorney Rebecca Betts, the State of West Virginia, Wood County, and the City of Parkersburg.  This Complaint, which alleged various violations of Ervin's constitutional rights, contained many of the same bizarre ideations found in Shuler's Complaint in Case No. 6:97-cv-1199, filed several months later.

Despite the fact that each of the defendants filed motions to dismiss and/or motions for summary judgment, Ervin filed documents entitled "Response, Writ of Error, Default Judgment Federal Rules of Civil Procedure Rule 55" against each of the defendants, and filed motions for hearing concerning each of those requests for default judgment.

This matter was assigned to Judge Haden and was referred to Magistrate Judge Hogg.  On October 23, 1997, Magistrate Judge Hogg submitted a Report and Recommendation finding that none of the defendants was in default and recommending that the District Court deny each of Ervin's motions for default judgment and grant each of the defendants' motions to dismiss and/or motions for summary judgment.  (# 8, Ex. A).

On November 12, 1997, Judge Haden adopted the Report and Recommendation, and denied Ervin's motions for default judgment and motions for hearing, and  granted the motions to dismiss and/or motions for summary judgment filed by the various defendants.  The dismissal order stated, "future incomprehensible and harassing litigation filed by plaintiff or parties sharing plaintiff's pleading formats will subject the filer to sanctions . . . ." (<u>Id.</u>, Ex. B).

    2.  <u>Ervin v. State of West Virginia</u>, 6:97-cv-01145 (S.D. W. Va. 1998)(Goodwin, J.)(this matter was consolidated with 6:97-cv-01199, and was dismissed with prejudice).

This Complaint filed by Ervin on November 24, 1997, set forth

essentially the same allegations as the Complaint in <u>Ervin v. Rhodes</u>, 6:97-cv-00921, except that it added Judge Haden, Magistrate Judge Hogg, and West Virginia Attorney General Darryl McGraw as defendants.  This case was assigned to Judge Goodwin.

Despite the fact that each of the defendants timely filed motions to dismiss, Ervin again moved for default judgments against all of the defendants.  On December 29, 1997, the Clerk, in error, entered default against defendants Donna Jackson, Darryl McGraw, William Rhodes, Jeff Bowles, Harold Phillips, Wood County, the State of West Virginia, Margaret Monroe, the City of Parkersburg, Dan Fowler and Emily Bradley.  On December 30, 1997, Judge Goodwin entered an Order vacating the defaults entered against those defendants, pursuant to Rule 60(a) of the Federal Rules of Civil Procedure.  (# 8, Ex. C).

On December 31, 1997, Judge Goodwin consolidated this matter with <u>Shuler v. State of West Virginia</u>, 6:97-cv-01199.  The Order consolidating these matters stated that Ervin's and Shuler's Complaints were "two more episodes in a series of vexatious litigation initiated by the above-named plaintiffs, for no apparent purpose other than to harass the defendants and congest the dockets of various state and federal courts in West Virginia." (<u>Id.</u>, Ex. D).

On January 30, 1998, a hearing was held to allow Shuler and Ervin an opportunity to show cause as to why sanctions should not

8

be imposed for their "pattern of frivolous and harassing litigation." Shuler and Ervin failed to appear at the hearing.

Thus, on January 30, 1998, Judge Goodwin entered an Order dismissing these matters with prejudice. The Order further stated:

> The Court also **PERMANENTLY ENJOINS** the plaintiffs from filing any future action in any United States court without first seeking leave from this Court. The Court also **PERMANENTLY ENJOINS** the plaintiffs from assisting, guiding, or encouraging other parties to file similar frivolous pleadings. In seeking leave of Court to file a pleading, a plaintiff must submit a motion to this Court for leave to file such an action. In that motion, the plaintiff must certify that the claims that he or she wishes to present are based on facts different than those raised in past or current litigation and are not frivolous. Only after the Court has granted such a motion may the pleading be filed and defendants served with process.
>
> Failure of a plaintiff to comply with this Order may subject that plaintiff to a contempt of court sanction or other sanctions. Furthermore, anyone with notice of this Order who acts in concert with a plaintiff to violate the terms of this Order also may subject themselves to sanctions.

(Id., Ex. E).

Despite this injunction, and Judge Goodwin's order vacating the entry of default against some of the defendants in Ervin v. State of West Virginia, 6:97-cv-01145, on March 26, 1998, Ervin filed judgment liens against those defendants in the Circuit Court of Kanawha County. On June 25, 1998, the Honorable Irene Berger, Circuit Court of Kanawha County, granted a Petition for Injunctive Relief filed by those defendants in State v. Ervin, Civil Action No. 98-C-1432. (# 8, Ex. F). Judge Berger's Amended Order states

that Ervin "improperly filed judgment liens" and it "precluded and enjoined [Ervin] from filing any future pleadings, liens, or documents with any county clerk or court in the State of West Virginia without first seeking leave from the court in the county where the pleadings, liens, or other documents are to be filed." (Id.)

On December 3, 1998, Petitioner filed a civil action in this court, Ritchie v. State of West Virginia, 6:98-cv-01151 (S.D. W. Va. 1998)(Haden, C.J.).  The defendants named in this matter were the State of West Virginia, Wood County, the City of Parkersburg, Judge Goodwin, the law firm of Steptoe & Johnson, attorney W. Randolph Fife, attorney Paul A. Billups, the law firm of Mundy & Adkins, attorney Benjamin Hughes, and the law firm of Pullin, Knopf, Fowler & Flanagan.  This Complaint alleged unspecified violations of Petitioner's due process rights and also contained allegations on behalf of Ervin, which Petitioner had no standing to raise.  The matter was assigned to Judge Haden and was referred to Magistrate Judge Hogg.

Petitioner filed various motions to strike the motions to dismiss and motions for sanctions filed by the defendants, and also filed motions for default judgment against all of the defendants. On April 9, 1999, Magistrate Judge Hogg submitted a Report and Recommendation recommending that all of Petitioner's motions be denied, that all of the defendants' motions to dismiss be granted,

and that the defendants' motions for sanctions be granted.  (<u>Id.</u>, Ex. G).

Magistrate Judge Hogg's Report and Recommendation was adopted by Judge Haden on April 29, 1999.  (<u>Id.</u>, Ex. H).  In the dismissal Order, Judge Haden notified Petitioner that "similar filings of this nature, including joining judicial officers and court personnel, will subject him to a contempt citation."  (<u>Id.</u>)  Petitioner's appeal of the Order dismissing his case was unsuccessful.  (<u>Id.</u>, Ex. I).

On November 19, 2004, Petitioner filed his instant Petition, which is 68 pages in length.  (# 1).  The largely incomprehensible document appears to allege numerous unspecified due process and other constitutional rights violations by the defendants against himself, Ervin and Shuler.  The Petition claims that Petitioner be awarded "Compensatory Damages in the amount of Three Hundred Million Dollars in 'lawful tender' {Silver/Gold}" from Respondents the State of Ohio, the State of West Virginia, Judge Joseph Goodwin, and Judge Gladys Kessler "'jointly and severally' for neglect of Procedural and Substantive Due Process of Law Secured under Treaty of 1789 Constitution of United States of America Amendment V for Due Process of Law."  (# 1 at 6).

Some other examples[1] of the requests for relief made in this

_____

[1] The allegations and requests for relief made by Petitioner are too numerous and incoherent to set out in detail in this Proposed Findings and Recommendation.

Petition include (1) that this court declare unconstitutional the Eleventh, Fourteenth and Sixteenth Amendments to the United States Constitution on the basis that they were not ratified by 3/4 of the States (the Petition claims that some of the States, including West Virginia and Ohio, are not actually States, but only territories and, thus, could not ratify the amendments); (2) that the court issue a writ of mandamus against President Bush to fill alleged vacancies in the United States Senate, and other relief related thereto; (3) that the court restore Gold/Silver as the lawful currency of the United States of America; and (4) that the court "[d]eclare **all Law passed/enacted** by a Powerless Congress of United States of America after April 20, 1871 as moot under provision of Treaty of 1789 Constitution of united States of America Article I Section 9[3] for 'No Ex Post Facto Law or Bill of Attainder shall be Passed . . . .'" (<u>Id.</u> at 7).

The Petition further requests relief on behalf of Ervin and Shuler; namely, that the court order the return of Shuler's children, whom Petitioner claims were illegally seized, and that the court set aside Judge Goodwin's prior order vacating the entry of default against certain defendants in <u>Ervin v. State of West Virginia</u>, Case No. 6:97-cv-01145. (<u>Id.</u> at 6). The allegations made by Petitioner in support of these claims for relief are the same allegations that were made in Ervin's and Shuler's prior complaints that resulted in the pre-filing injunction being entered

12

against them.

From the allegations made in the Petition, it appears that Petitioner previously filed several other civil actions in the United States District Court for the District of Columbia (Cases No. 00-1878, 01-0008 and 01-0009), and the United States District Court for the Southern District of Ohio (Case No. 02-222). It further appears that those actions were brought against judges and other judicial employees who had refused Petitioner's requests for the entry of default against the judicial defendants therein, and dismissed those civil actions. (# 1 at 45-59).

Specifically, it appears that Petitioner's allegations against Judge Gladys Kessler arise from her rulings in the matters filed in the United States District Court for the District of Columbia over which she presided, Cases No. 00-1878, 01-00008 and 01-00009. In a similar fashion to the matters filed in this court, Petitioner's claims in those suits concerned actions taken by judicial employees through the denial of entry of defaults and the dismissal of those actions. (# 28, Exs. 2-5).

In the instant matter, Petitioner filed his Petition and paid the $150 filing fee. Summonses were issued, and Petitioner served process on each of the respondents by certified mail.

On December 15, 2004, the State of West Virginia filed a Motion to Dismiss and/or Motion for Summary Judgment. (# 7). On December 22, 2004, the State of Ohio filed a Motion to Dismiss. (#

13

9).  On January 7, 2005, Judge Goodwin filed a Motion to Strike and Impose Sanctions, and in the alternative, Motion to Dismiss (# 15), and a Memorandum in Support of his motion (# 16).  On March 23, 2005, Judge Kessler filed a Motion to Strike and Impose Sanctions, and in the alternative, Motion to Dismiss (# 28), and a Memorandum of Law in support thereof (# 29).

Petitioner has filed three documents entitled "Response: Writ of Error: Judgment by Default Treaty of 1789 Constitution of united States of America Amendment V" (## 10, 17 and 22), three documents entitled "Writ of Praecipe," with attached documents entitled "Entry of Default" (## 11, 18 and 24), and three documents entitled "Affidavit of Truth" (## 12, 19 and 25).  The undersigned proposes that the presiding District Judge collectively construe these documents as motions for entry of default and for default judgment against each of the respondents.  Petitioner has also filed motions for hearing on each of these motions for default judgment (## 13, 20 and 26).

## ANALYSIS

### A.   Petitioner's Motions.

Petitioner's motions for entry of default and default judgment against the respondents are unjustified.  A review of the docket indicates that respondents the State of West Virginia, the State of Ohio and Judge Goodwin timely filed motions to dismiss in lieu of an answer.  Thus, the undersigned proposes that the presiding

14

District Judge **FIND** that these respondents are not in default and that Petitioner is not entitled to the entry of default or a default judgment against these respondents.

The undersigned notes that Judge Kessler's motion was not timely filed.  Thus, the entry of default against her may have been warranted.  However, using the standard for absolute judicial immunity discussed in detail <u>infra</u> at pp. 18-20, the undersigned proposes that the presiding District Judge **FIND** that the allegations against Judge Kessler concern actions taken by her in her judicial capacity, and that they were not undertaken in clear absence of jurisdiction.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Judge Kessler is entitled to absolute immunity, and that Petitioner is not entitled to an entry of default or a default judgment against Judge Kessler.

For these reasons, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's motions for entry of default and for default judgment (## 11, 18 and 24) and **DENY** Petitioner's motions for hearing (## 13, 20 and 26).

**B.    Judge Goodwin's and Judge Kessler's Motions to Strike or Motions to Dismiss.**

Judge Goodwin and Judge Kessler move to strike the instant Petition as having been filed in violation of the permanent injunction issued by Judge Haden, and further move to have

15

sanctions imposed on Petitioner for the violation of three court orders, including the permanent injunction. (# 16 at 3; # 29 at 4-6). Judge Goodwin's Memorandum in Support of his motion states:

> As with the previous filings, this complaint is "largely incomprehensible and silly." (Ex. 1). Ritchie, Ervin and Shuler have been admonished against and permanently enjoined from such filings by former Chief Judge Charles H. Haden II ("Judge Haden") and District Judge Joseph R. Goodwin ("Judge Goodwin"). Ritchie's apparent defiance of these orders is both contemptuous and sanctionable.

> * * *

> Notably, this complaint is nearly identical in its formatting, semantics and substance to those previously filed by Ritchie, Ervin and Shuler and described in various orders as "frivolous," "vexatious," "nonsensical," "baseless," and a waste of the court's time. (Ex. 1-3).

> * * *

> Ritchie further seeks to set aside an order issued by Judge Goodwin setting aside defaults in civil action 6:97-1145,[] to which Ritchie was not a party. (Page 6, ¶ d). Notably, Ritchie fails to assert any act performed by Judge Goodwin that has resulted in harm to him or would otherwise give him standing to bring a civil action. Indeed, the entirety of the complaints against Judge Goodwin are asserted under the heading, "Injuries Sustained against Pamela Sue, Ervin." ( Pages 41-42, ¶¶ 10-16). It appears then, that Ritchie has filed this action, in part, on behalf of Ervin, and is thus, acting as her counsel. [footnotes omitted]. It is precisely this conduct that the permanent injunction sought to prohibit when it warned others from taking action in concert with Ervin and Shuler. (Ex. 2)

> * * *

> Notwithstanding repeated warnings, admonitions and permanent injunction, Ritchie defiantly filed the instant complaint in which judicial officers, including Judge Goodwin have been joined. Accordingly, Judge Goodwin respectfully requests that the instant complaint be

16

stricken and that appropriate sanctions be imposed.
(# 16 at 2-3, 5).  Judge Kessler's Memorandum of Law makes a
similar argument.  (# 29 at 4-6).

Neither Shuler, nor Ervin, are petitioners in this civil
action.  Moreover, there is no direct evidence in the record to
indicate that either Shuler or Ervin requested that Petitioner file
this action or seek any relief on their behalf.  Nevertheless, the
fact that Petitioner makes numerous allegations concerning actions
taken by the respondents in prior actions filed by Shuler and
Ervin, the fact that those allegations are nearly identical to
allegations made by Shuler and Ervin in their prior actions, and
the fact that the instant Petition seeks relief on behalf of Shuler
and Ervin, weigh heavily in favor of a finding that Petitioner is
acting in concert with Shuler and Ervin, and that Petitioner had
notice of the actions taken in Shuler and Ervin's prior lawsuits,
including the issuance of the permanent injunction.

Accordingly, the undersigned proposes that the presiding
District Judge **FIND** (1) that Petitioner had notice of the permanent
injunction issued by Judge Haden on January 30, 1998, (2) that
Petitioner is acting in concert with Ervin and Shuler in filing
this civil action, and (3) the Petition violates the terms of the
permanent injunction because Petitioner did not seek leave from
this court prior to filing the Petition.  For these reasons, it is
respectfully **RECOMMENDED** that the presiding District Judge **GRANT**

17

Judge Goodwin's Motion to Strike the Petition (# 15-3) and Judge Kessler's Motion to Strike the Petition (# 28-3), order the Petition **STRICKEN** from the record, and **DISMISS** this civil action.

In the alternative, both Judge Goodwin and Judge Kessler move to dismiss the Petition on the basis that they are entitled to absolute judicial immunity, asserting that they cannot be held liable for damages resulting from judicial acts taken within their jurisdiction. <u>See</u> <u>Bradley v. Fisher</u>, 80 U.S. 335 (1781).  The memoranda of law in support of both of their motions emphasizes that "[f]ew doctrines are more solidly established at common law than the absolute immunity of judges from suit for acts performed in their judicial capacity. <u>Cleavinger v. Saxner</u>, 474 U.S. 193 (1985); <u>Pierson v. Ray</u>, 386 U.S. 547, 553-554 (1967)." (<u>Id.</u> at 5).

Both Judge Goodwin and Judge Kessler recognize, however, that two criteria must be met for absolute immunity to apply.  First, "the judge's actions cannot have been undertaken in the 'clear absence of all jurisdiction.'" <u>King v. Myers</u>, 973 F.2d 354, 356 (4th Cir. 1992).  Second, the challenged act must be a "judicial act." <u>Id.</u>  Thus, courts must ascertain "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." <u>Id.</u> (# 16 at 6-7; # 29 at 8-9).

Judge Goodwin's Memorandum further states:

> Although nearly impossible to discern, it appears that the challenged act, in the matter <u>sub judice</u> is an

18

order entered by Judge Goodwin on December 30, 1997 in
which defaults erroneously entered by the clerk were
vacated. [footnotes omitted] (Ex. 4).  Notably, this
order was entered in the same civil action (6:97-11[45
and 6:97-1199]) in which Judge Goodwin ultimately
enjoined Ervin and Shuler [footnote omitted] from future
filings, and warned others against acting on their behalf
or in concert with them.  (Ex. 2).

(# 16 at 7).  Judge Goodwin asserts that his act of entering an

order vacating the entry of default against the defendants in Civil

Action No. 6:97-cv-1145 was a judicial act which was clearly within

the authority of the Federal Rules of Civil Procedure, specifically

Rule 60(a).  (Id. at 7-8).

Judge Kessler's Memorandum states:

The orders entered by Judge Kessler served to set aside
default entries against named judicial officers and to
dismiss Ritchie's complaints with prejudice. (Exs. 2-5).
Ritchie's duplicitous pattern of obtaining defaults
against judicial officers is the same practice which gave
rise to the order entered by Judge Goodwin about which
Ritchie also complains in this action [footnote omitted].
* * * Judge Kessler acted within the clear authority of
the Federal Rules of Civil Procedure when ordering the
improperly obtained defaults set aside.  Furthermore, it
is axiomatic that the entry of orders by a court in the
course of litigation is a function normally performed by
a judge, and thus a judicial act.  The instant complaint
does not assert otherwise, and in fact, refers to Judge
Kessler throughout the complaint as "Gladys Kessler,
[Judge]" in apparent recognition that Judge Kessler was
acting at all relevant times in her judicial capacity
(Page 45, ¶¶ 17-18; Page 49-50, ¶¶ 45-52).

With both preliminary criteria satisfied Judge
Kessler is entitled to absolute immunity and the instant
complaint against her must be dismissed.

(# 29 at 9-10).

19

Should the presiding District Judge decline to strike the Petition from the record, the undersigned proposes that the presiding District Judge **FIND** that the actions taken by Judge Goodwin and Judge Kessler, as alleged in the instant Petition, were "judicial acts" taken within their jurisdiction. The undersigned further proposes that the presiding District Judge **FIND** that Judge Goodwin and Judge Kessler are entitled to absolute judicial immunity, and that the Petition fails to state a claim against them upon which relief can be granted.

Accordingly, should the presiding District Judge decline to strike the Petition from the record, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Judge Goodwin's Motion to Dismiss (# 15-1) and Judge Kessler's Motion to Dismiss (# 28-1)[2].

The motions for sanctions filed by Judge Goodwin and Judge Kessler (## 15-2 and 28-2) will be addressed separately, following the undersigned's certification of facts to the presiding District Judge.

**C.   The Motions filed by the State of West Virginia and the State of Ohio.**

The Memorandum of Law in Support of the Motion to Dismiss and/or Motion for Summary Judgment filed by the State of West

---

[2] Judge Kessler has also moved to dismiss the Petition on the basis that this court lacks personal jurisdiction over her. In light of the undersigned's proposed finding that Judge Kessler is absolutely immune from liability, the undersigned finds it unnecessary to address the issue of personal jurisdiction.

Virginia sets out the procedural history that led to the entry of the pre-filing injunction against Shuler and Ervin, asserts that the instant Petition was filed in violation of that injunction, and requests that Petitioner be enjoined from any further filings.  (# 8 at 2-5; 10-15).  The Memorandum further asserts that the Petition fails to state a claim against the State of West Virginia because the State is not a person under 42 U.S.C. § 1983, and because the State is immune from liability under the Eleventh Amendment.  (Id. at 5-9).

Because the undersigned will not rely upon any materials outside the pleadings, the undersigned proposes that the presiding District Judge treat the State of West Virginia's motion as a motion to dismiss and **RECOMMENDS** that the presiding District Judge **DENY** the State of West Virginia's motion for summary judgment (# 7-2).

The Motion to Dismiss filed by the State of Ohio also asserts that the State of Ohio is entitled to Eleventh Amendment immunity, that Petitioner has failed to state a claim upon which relief can be granted, and that Petitioner's requests for a writ of mandamus are unwarranted in fact and law.  (# 9 at 2-6).  The undersigned will address each of these assertions in turn.

####     1.    Eleventh Amendment immunity.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be

21

> construed to extend to any suit in law or equity
> commenced or prosecuted against one of the United States
> by Citizens of another State or by Citizens or Subjects
> of any Foreign State.

U.S. Const., Amend. XI.  It has been consistently held that the

Eleventh Amendment grants absolute immunity to a state and its

officials from suits brought in federal court by citizens of that

state or any other state, unless the state consents thereto, or

Congress explicitly abrogates the immunity in clear and

unmistakable language.  <u>See</u>, *e.g.*, <u>Welch v. Texas Dept. of

Highways</u>, 483 U.S. 468 (1987); <u>Employees v. Missouri Public Health

and Welfare Dept.</u>, 411 U.S. 279 (1973); <u>Fitzpatrick v. Bitzer</u>, 427

U.S. 445 (1976).  Both the State of West Virginia and the State of

Ohio assert that they are immune from liability on Petitioner's

claims.

> The State of West Virginia's Memorandum states:
>
> Plaintiff's cause of action against the State of West
> Virginia presumably rests upon 42 U.S.C. § 1983.  The
> issue as to whether Congress intended to abrogate
> Eleventh Amendment immunity under § 1983 has already been
> decided by the United States Supreme Court.  In <u>Quern v.
> Jordan</u>,440 U.S. 332 (1979), the Court concluded that
> nothing surrounding either the adoption of the Fourteenth
> Amendment or 42 U.S.C. § 1983 supports a finding that
> Congress intended to override the Eleventh Amendment.

(# 8 at 8).  The State of West Virginia further asserts that it has

not waived its Eleventh Amendment immunity:

> [T]here is simply no constitutional or statutory
> provision evidencing any intention to permit this type of
> lawsuit in federal court.  In fact, the West Virginia
> Constitution actually provides an absolute prohibition
> against such suits.  Under Article VI, Section 35:

> The State of West Virginia shall never be made
> a defendant in any court of law or equity
> except the State of West Virginia, including
> any subdivision thereof, or any municipality
> therein, or any officer, agent or employee
> thereof, may be made a defendant in any
> garnishment or attachment proceeding, as
> garnishee or suggestee.

(Id. at 9).

Likewise, the State of Ohio asserts that it has not waived its immunity or consented to suit in federal court. (# 9 at 3). The State of Ohio further asserts:

> Throughout the petition, Petitioner fails to point
> to any federal law that abrogates the State of Ohio's
> immunity. The only argument that Petitioner seems to
> raise regarding the State of Ohio's lack of immunity is
> Petitioner's belief that the State can be sued as a
> person because Ohio was improperly ratified as a state.
> See Affidavit in Support, pp. 60-61. Because such an
> argument is without merit, the Eleventh Amendment is
> clearly applicable. Therefore, the State of Ohio is
> immune from this lawsuit under the Eleventh Amendment,
> and the Court should dismiss the State of Ohio.

(Id. at 3-4).

A review of Petitioner's obscure Petition indicates that, at best, Petitioner is attempting to state claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights, and those of Ervin and Shuler. As specifically argued by the State of West Virginia, Congress did not abrogate Eleventh Amendment immunity in enacting section 1983. Neither the State of West Virginia nor the State of Ohio has consented to suit in federal court on claims such as those Petitioner attempts to raise in his Petition.

23

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that both the State of West Virginia and the State of Ohio are entitled to immunity under the Eleventh Amendment.

### 2. <u>Will</u> doctrine and failure to state a claim.

Even if Petitioner could overcome the immunity of the States of West Virginia and Ohio, neither state is a "person" within the meaning of section 1983, and neither is subject to suit thereunder. See <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989) (# 8 at 5-6). Moreover, Petitioner does not allege any specific facts to support his claims against either of these defendants.

The State of Ohio's motion states, "[t]he only references to the State of Ohio in the Petition are numerous conclusions of law without any factual support." (# 9 at 4). The State of Ohio's motion further states:

> While generally a *pro se* litigant's petition is afforded a liberal interpretation and construction, *Haines v. Kerner*, 404 U.S. 519 (1972), a court is not required to accept summary allegations or unwarranted legal conclusions in determining whether a petition states a claim for relief. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996). To survive a motion to dismiss, the petition must contain direct or inferential allegations respecting all the material elements to sustain a recovery under some **viable** legal theory. *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th. Cir. 2000). More is required than mere bare assertions of legal conclusions. *Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

> Because Petitioner makes no substantive allegations

24

under any viable legal theory against the State of Ohio,
Petitioner has failed to state a valid federal claim for
relief against the State of Ohio. Therefore, the State
of Ohio respectfully requests that this Court dismiss the
action against it, pursuant to Fed. R. Civ. P. 12(b)(6).

(Id. at 4-5).

Even construing the Petition liberally, it fails to allege any specific facts which would support the elements of any viable legal theory against either the State of Ohio or the State of West Virginia. Furthermore, some of the allegations made by Petitioner concern actions taken against Ervin and Shuler, who are not parties herein, and Petitioner lacks standing to seek any relief on their behalf.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the Petition fails to state a claim against the State of West Virginia and the State of Ohio.

### 3.    Petition for Writ of Mandamus.

In its Motion to Dismiss, the State of Ohio further asserts that Petitioner's request for a writ of mandamus is "unwarranted in fact and law and should be dismissed." (# 9 at 5). The motion further states that

Mandamus is an extraordinary remedy, *Gulfstream Aerospace Corp. v. Mayacamas Corp.* 485 U.S. 271, 289 (1988), and it will only be granted when the petitioner shows that "its right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384 (1953).

The instant petition fails to assert any justification for the issuance of a writ of mandamus by this Court. Petitioner simply does not allege any

factual basis as to why such an extraordinary remedy is appropriate in this matter.

(# 9 at 5-6).

Title 28, United States Code, Section 1361, provides as follows:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

A writ of mandamus "will issue only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." Central South Carolina Chapter, Soc. of Professional Journalists, Sigma Delta Chi v. United States District Court for the District of South Carolina, 551 F.2d 559, 562 (4th Cir. 1977).

The undersigned proposes that the presiding District Judge **FIND** that the Petition herein does not allege any clear and indisputable duty owed to Petitioner by any of the respondents herein, or by the President of the United States. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner has failed to state any claim which would warrant the extraordinary relief of a writ of mandamus.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motions to Dismiss filed by the State of West Virginia (# 7-1) and the State of Ohio

(# 9).

**D.   Pre-filing injunction.**

In its Motion to Dismiss, the State of West Virginia requests that injunctive relief and sanctions be imposed against Petitioner. The State of West Virginia relies upon Rule 65 of the Federal Rules of Civil Procedure and the "All Writs Act," 28 U.S.C. § 1651(a) in support of its request.  The motion discusses various cases in which injunctions have been granted to prohibit the repetitive filing of frivolous lawsuits.  (# 8 at 10-15).

Title 28, United States Code, Section 1651(a) provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law."  28 U.S.C. § 1651(a).  The "All Writs Act," as this section has come to be known, "grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants . . . ." Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 817 (4th Cir. 2004).  "Such a drastic remedy must be used sparingly, however, consistent with constitutional guarantees of due process of law and access to the courts.  U.S. Const. amend XIV, § 1." Id.

The Cromer court further set out four factors to consider in granting a pre-filing injunction:

27

In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *See, e.g., Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *Green v. Warden, United States Penitentiary* , 699 F.2d 364, 368-69, 370 n.8 (7th Cir. 1983); *Pavilonis*, 626 F.3d at 1078-79.

Id. at 818.  Even if a court finds that an injunction is warranted, it must be "narrowly tailored to fit the specific circumstances at issue."  Id.

The circumstances of the instant case weigh in favor of the issuance of a pre-filing injunction.  Petitioner and his associates, Ervin and Shuler, have a significant history of filing vexatious, harassing and duplicative lawsuits.  Ervin and Shuler have already been enjoined from bringing suit without permission of this court.  Furthermore, Petitioner has not demonstrated a good faith basis for pursuing the instant litigation.

Petitioner has filed several petitions that contain frivolous and indecipherable claims.  The court has been charged with trying to interpret Petitioner's cryptic allegations, and has invested valuable resources in the resolution of these frivolous matters.  Moreover, the defendants in these matters, who have all successfully asserted absolute immunity, have invested valuable resources in defending these frivolous suits.  Thus, Petitioner

28

has placed an unnecessary burden on both the court and the defendants.

Furthermore, Petitioner was admonished not to join judicial officers and other court personnel as defendants, and failed to heed the court's order.  Thus, no sanction other than a pre-filing injunction appears to be adequate at this point.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that a pre-filing injunction is warranted.  It is respectfully **RECOMMENDED** that the presiding District Judge **PERMANENTLY ENJOIN** Petitioner from filing any future actions in this United States District Court without first obtaining leave from the court.  It is further respectfully **RECOMMENDED** that the presiding District Judge **PERMANENTLY ENJOIN** Petitioner from assisting, guiding or encouraging other parties to file similar frivolous pleadings.

The undersigned will address the State of West Virginia's request for additional sanctions in the document addressing the motions for sanctions filed by Judge Goodwin and Judge Kessler.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, and the holding in Mullins v. Hinkle, 953 F. Supp. 744

(S.D. W.Va. 1997), Goodwin, J., the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

March 31, 2005
Date

Mary E. Stanley
United States Magistrate Judge

30