```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

AMBASSADOR LARRY IRVING, RITCHIE JUNIOR,

    Petitioner

v.                              Civil Action No.: 2:04-1239

STATE OF WEST VIRGINIA and
STATE OF OHIO and
JUDGE JOSEPH GOODWIN,
in his individual capacity, and
JUDGE GLADYS KESSLER,
in her individual capacity

    Respondents

### MEMORANDUM OPINION AND ORDER

Pending is a petition for "WRIT OF MANDAMUS TREATY OF 1789 CONSTITUTION OF UNITED STATES OF AMERICA ARTICLE II SECTION 2[3]" filed November 19, 2004. Also pending are the following motions: (1) a motion by the State of West Virginia to dismiss or, in the alternative, for summary judgment, filed December 15, 2004, (2) a motion by the State of Ohio to dismiss, filed December 22, 2004, (3) petitioner's motions for entry of default against West Virginia and Ohio and for a hearing, filed January 4, 2005, (4) motions by the Honorable Joseph R. Goodwin to dismiss, to strike, and for sanctions, filed January 7, 2005, (5) petitioner's motions for entry of default against Judge Goodwin and for a hearing, filed January 25, 2005, (6) Judge Goodwin's motion to strike, filed January 26, 2005, (7) petitioner's

motions for entry of default against the Honorable Gladys Kessler and for a hearing, filed February 10, 2005, and (8) Judge Kessler's motions to dismiss, to strike, and for sanctions filed March 23, 2005.

This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who has submitted her Proposed Findings and Recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Following entry of the Proposed Findings and Recommendation, petitioner filed a "Writ of Quo Warranto of Forfeiture of Charter and Ouster of Office." The court does not deem this filing to constitute an objection. Rather, the document is largely a restatement of petitioner's baseless filings that preceded it.

In view of the absence of any objections, there is no need to either recount or supplement the magistrate judge's very thorough factual and procedural history. Suffice to say the court concurs with the magistrate judge's observation that the petition is "largely incomprehensible[.]" (Prop. Fnd. & Recomm. at 11.) When one happens upon the few allegations in the petition that can be deciphered, they at once appear to lack any factual or legal basis. By example, petitioner seeks, inter alia, declarations that (1) the Eleventh, Fourteenth and

2

Sixteenth Amendments are unconstitutional, (2) Ohio and West Virginia are territories rather than states, (3) President Bush must immediately fill non-existent senatorial vacancies, and (4) all laws enacted since 1871 are moot, as they were passed by a "Powerless Congress."  (Id. at 12.)

The magistrate judge has chosen a host of alternative bases supporting the dismissal of the petition.  In reviewing those alternative grounds, the court concludes this action is most appropriately resolved by resort to the well-settled doctrines of sovereign and judicial immunities, which plainly require dismissal.  The court, accordingly, adopts and incorporates herein the magistrate judge's recitation and application of those doctrines to the respondents.

In addition to seeking dismissal, Judges Goodwin and Kessler, along with the State of West Virginia, seek sanctions. Judges Goodwin and Kessler base their sanctions request on petitioner's putative violation of a January 30, 1998, pre-filing injunction previously entered by Judge Goodwin.  The State of West Virginia, perhaps deeming the injunction ineffective against petitioner who was not specifically named therein, seeks the entry of a specific pre-filing injunction against him in an effort to halt his abusive litigation practices.

3

Contemporaneous with entry of the Proposed Findings and Recommendation, the magistrate judge also certified facts in support of a contempt citation pursuant to 28 U.S.C. § 636(e)(6). After reviewing the parties' briefing and the certification, the court declines to adopt that portion of the Proposed Findings and Recommendation from the commencement of section B on page 15 through the third sentence at the top of page 18. This portion of the recommended disposition appears to stem from petitioner's ostensible violation of the January 30, 1998, pre-filing injunction.

The court declines to extend the terms of the pre-filing injunction to petitioner for at least three reasons. First, the injunction is directed specifically only to Joel Anson Shuler and Pamela Sue Ervin, the plaintiffs in that action. The only way to enlarge the intended injunctive mandate to reach petitioner is through its language directed to "anyone with notice of this Order who acts in concert with a plaintiff to violate the terms" of the injunction. <u>Ervin v. State of West Virginia</u>, No. 6:97-1145, slip op. at 2 (S.D. W. Va. Jan. 30, 1998). There is presently an inadequate factual basis to so ensnare the petitioner.

4

Second, the action filed by Shuler and Ervin was prosecuted against different parties than those sued by petitioner here. The only common party is the State of West Virginia.

Third, and perhaps most important, Judge Goodwin entered the pre-filing injunction without benefit of the later-filed decision by the United States Court of Appeals for the Fourth Circuit in Cromer v. Kraft Foods North America, Inc., 390 F.3d 812 (4th Cir. 2004), discussed infra. Although the order appears, with admirable foresight, to take into consideration many of the factors deemed important in Cromer, one is left to speculate whether the injunction would have been issued under the strict standards laid down in the appellate opinion, as more fully discussed below. Accordingly, the court does not deem it appropriate to extend the commands of the injunction to petitioner.[1]

The court next considers the separate question posed by

---

[1]To the extent the magistrate judge's certification of facts was intended to serve as the basis for imposition of a contempt citation, the court deems it ineffective. The court declines to set aside the certification in toto, however, as it may prove helpful in later determining the propriety of fees and costs if the respondents so move.

5

the State of West Virginia concerning whether a specific pre-filing injunction should now issue against petitioner. The analysis is controlled by the recent decision in Cromer, where the court of appeals noted the extraordinary constitutional implications arising from a pre-filing injunction:

> Such a drastic remedy must be used sparingly, . . . consistent with constitutional guarantees of due process of law and access to the courts. These rights are longstanding and of fundamental importance in our legal system. "The due process clause requires that every man shall have the protection of his day in court." And, the Supreme Court has explained that the particular constitutional protection afforded by access to the courts is "the right conservative of all other rights, and lies at the foundation of orderly government."
>
> Thus, a judge should not in any way limit a litigant's access to the courts absent "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." Indeed, "use of such measures against a pro se plaintiff should be approached with particular caution" and should "remain very much the exception to the general rule of free access to the courts."

Id. at 817-18 (citations omitted). Following these cautionary considerations, the panel announced a four-factor test:

> In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

6

<u>Id.</u> at 818 (citations omitted). Although at least two of the factors weighed in favor of the injunction in <u>Cromer</u>, the court of appeals' set aside the lower court order that created it. In doing so, the panel observed:

> [I]t does not appear that the judge considered the <u>important</u> fourth factor--the adequacy of alternative sanctions. <u>This omission gains particular significance here, because it may well be that in this case, a finding of contempt would have sufficed to deter Cromer from making future filings</u>.

<u>Id.</u> at 818 (emphasis added).

Petitioner has undeniably abused the litigation process. In 1998, he filed his only prior action in this district. It was a baseless set of claims against a host of undeserving targets. In the April 29, 1999, order dismissing that action, the Honorable Charles H. Haden II cautioned petitioner that "similar filings of this nature, including joining judicial officers and court personnel, will subject him to a contempt citation." <u>Larry Ritchie Junior v. State of West Virginia</u>, No. 6:98-1151, slip op. at 3 (S.D. W. Va. Apr. 29, 1999). This appears to be the only such cautionary admonition petitioner has received from a judicial officer.

Undeterred, petitioner thereafter filed harassing actions in the United States District Courts for both the

7

District of Columbia and the Southern District of Ohio. The Ohio action named both Judges Goodwin and Haden. Defendants in the Washington actions included Chief Justice William Rehnquist and a variety of individuals apparently employed by the district court there. This pattern of litigation misconduct appears to have been committed in bad faith and clearly burdened both the tribunals and the respondents.

The first three Cromer factors, then, weigh in favor of a pre-filing injunction. The "important" fourth factor, however, counsels restraint. It appears the only direct warning petitioner ever received concerning his misconduct was the brief notice of a prospective contempt citation contained in Judge Haden's April 29, 1999, dismissal order. It would thus be speculation for the court to find that alternative sanctions, not yet tried, would be fruitless. The court, accordingly, declines to enter a pre-filing injunction. The court further declines to adopt the conclusion reached by the magistrate judge at the end of section D on page 29.

Although the requested extraordinary injunction is not warranted presently, respondents may, with further briefing, seek to demonstrate their entitlement to other, alternative sanctions for petitioner's apparent bad faith abuse in this case of the

8

litigation process. Without suggesting the propriety of these other deterrent measures, the court grants the respondents leave to attempt to make the necessary showing for an award of fees and costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, the costs statute at 28 U.S.C. § 1920, <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991), or any other recognized authority that might support such an award.[2] Any such motion shall be personally served to the petitioner and filed no later than August 1, 2005. Petitioner may respond to the filings within 14 days of their receipt by him. Respondents may then reply within 7 business days later.

With the foregoing modifications, the court ORDERS that:

1. The Proposed Findings and Recommendation be, and it hereby is, adopted by the court;

2. The petition for writ of mandamus be, and it hereby is, denied;

3. The motion by the State of West Virginia to dismiss or, in the alternative, for summary judgment be, and it

---

[2] The court is uncertain whether fees, costs, or both might be levied in favor of the judicial defendants in view of their representation by the Department of Justice. Any motion on their behalf should address the propriety of such an award in favor of the sovereign.

hereby is, granted insofar as it seeks dismissal of the petition and denied in all other respects;

    4.    The motion by the State of Ohio to dismiss be, and it hereby is, granted;

    5.    The petitioner's motions for entry of default and for hearings be, and they hereby are, denied;

    6.    The motions by Judges Goodwin and Kessler to dismiss, to strike, and for sanctions be, and they hereby are, granted insofar as they seek dismissal of the petition and denied in all other respects;

    7.    The motion by Judge Goodwin to strike be, and it hereby is, denied as moot; and

    8.    This matter is dismissed with prejudice and stricken from the docket. The court retains jurisdiction solely for purposes of resolving any forthcoming motions for alternative sanctions.

    Pursuant to Federal Rule of Appellate Procedure 4(a)(1), petitioner shall have thirty days from the date of entry of this decree in which to appeal. Failure within thirty days from this date to file with the Clerk of this court a notice of appeal of this order and the Judgment thereon will render this

order and the Judgment thereon final and unappealable.

The Clerk is directed to forward copies of this written opinion and order to the pro se petitioner via certified mail, return-receipt requested, all counsel of record, and the United States Magistrate Judge. If petitioner refuses the mailed copy, the Clerk is directed to transmit the written opinion and order and the accompanying judgment to the United States Marshal for personal service upon him at his current place of residence.

DATED: July 11, 2005

John T. Copenhaver, Jr.
United States District Judge